**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GARNISH AND GATHER, LLC,

      *Plaintiff,*

  -against-

TARGET CORPORATION AND TARGET
BRANDS, INC.,

      *Defendants.*

Case No. 1:19-cv-10404-JSR

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO THE DISTRICT OF MINNESOTA

Joseph M. Pastore III (JP1717)
Melissa Rose McClammy (MM7258)
Pastore & Dailey LLC
420 Lexington Avenue, 3rd Floor
New York, NY 10170
845.667.5711 (p)
646.661.4322 (f)
*Attorneys for Plaintiff*

Michael Lee
Lee Law PLLC
579 Fifth Avenue, 14th Floor
New York, NY 10606
212-621-8239

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..............................................................................................................................2

A.      Plaintiff's Choice of Forum Warrants Substantial Deference ...................................3

B.      The Locus of Operative Facts Is in New York ..........................................................5

C.      New York is a Convenient Forum for the Parties and Witnesses..........................7

D.      Location of Relevant Documents Does Not Favor Transfer...................................9

E.      Relative Means of the Parties Does Not Favor Transfer ...........................................9

F.      Familiarity With Governing Law Does Not Favor Transfer ...................................11

G.      The Interest of Justice Does Not Favor Transfer......................................................11

H.      If this Court Deems Transfer Appropriate, Transfer to United States District Court for the Northern District Court of Georgia, Atlanta Division is Warranted ............12

CONCLUSION.............................................................................................................................13

i

## TABLE OF AUTHORITIES

**Cases**

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525 (S.D.N.Y. 2004)

............................................................................................................................................. 11

*Cent. Sports Army Club v. Arena Assocs.*, 952 F. Supp. 181 (S.D.N.Y. 1997)............................. 7

*Cosa Xentaur Corp. v. Bow*, No. 13-CV-2912 (JS) (ARL), 2014 U.S. Dist. LEXIS 46307

(E.D.N.Y. Mar. 31, 2014) ....................................................................................................... 6

*Crane v. Metro-North Commuter RR*, 1989 U.S. Dist. LEXIS 7094, *6 (S.D.N.Y. 1989).......... 12

*Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62

(S.D.N.Y. 1993).................................................................................................................... 3

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81 (S.D.N.Y. 1995)................ 3

*ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542 (S.D.N.Y. 2008) ........................................... 8

*Ferrostaal, Inc. v. Union Pac. R.R.*, 109 F. Supp. 2d. 146 (S.D.N.Y 2000) ............................... 12

*Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513 (2d Cir. 1989) 2

*Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613 (S.D.N.Y.2016) .................... 4

*Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370 (S.D.N.Y. 2006) .................. 3

*Intria Corp. v. Intira Corp.*, 00 Civ. 7198 (AGS), 2000 U.S. Dist. LEXIS 17039 (S.D.N.Y. Nov.

27, 2000).............................................................................................................................. 10

*MasterCard Int'l Inc. v. Lexcel Sols., Inc.*, 2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. June 16,

2004).................................................................................................................................... 10

*Mattel, Inc. v. Adventure Apparel*, 00 Civ. 4085 (RWS), 2001 U.S. Dist. LEXIS 3179 (S.D.N.Y.

Mar. 15, 2001)........................................................................................................... 5, 6, 9, 10

*McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404 (S.D.N.Y. 2017).... 8

*Mohamed v. Tesfaye*, No. 18-cv-8469 (JSR), 2019 U.S. Dist. LEXIS 46197 (S.D.N.Y. Jan. 23, 2019)............................................................................................................................................... 11

*Navajo Nation v. Urban Outfitters, Inc.,* 918 F. Supp. 2d 1245 (D.N.M. 2013) ........................... 7

*Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146 (2d Cir. 2005) .............................. 4

*Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64 (2d Cir. 2003) ................................ 3

*Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880 (E.D.N.Y. Sep. 22, 2015) ............................................................................................. 9

*TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402 (S.D.N.Y. 2001)....... 11

*Toy Biz v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998) ......................................................... 5

*United States ex rel. Fisher v. Bank of Am., N.A.*, 204 F. Supp. 3d 618 (S.D.N.Y. 2016) ........... 12

*Verragio, Ltd. v. SK Diamonds*, No. 16-cv-6931 (KBF), 2017 U.S. Dist. LEXIS 68422 (S.D.N.Y. May 4, 2017) ............................................................................................................................... 6

*Williams v. Frank Martz Coach Co.*, No. 13-CV-1860 (MKB), 2014 U.S. Dist. LEXIS 66411 (E.D.N.Y. May 14, 2014)..................................................................................................... 7, 9

*YLD Ltd. v. Node Firm, LLC*, No. 15-CV-0855 (JPO), 2016 U.S. Dist. LEXIS 4826 (S.D.N.Y. Jan. 14, 2016) ......................................................................................................................... 6

## **Statutes**

28 U.S.C. § 1404(a)....................................................................................................................... 2

## **Rules**

Federal Rule of Civil Procedure 45(c)(3)(A)(ii)............................................................................. 8

Plaintiff Garnish and Gather LLC ("Plaintiff" or "G&G") respectfully submits this Memorandum of Law in Opposition to Defendants' Motion to Transfer to the District of Minnesota.

## PRELIMINARY STATEMENT

This case should not be transferred to the District of Minnesota because Plaintiff should be afforded deference in its selection of the forum state and because transferring to Minnesota would shift the inconvenience from Defendants Target Corporation and Target Brands, Inc. (collectively, "Defendants" or "Target") to Plaintiff. Transferring this case to the District of Minnesota would have a disproportionate effect on the small business operator, Plaintiff, and the mega-conglomerate Defendants are better suited to defend in the Southern District of New York ("this District"). In the alternative, if this Court determines venue is not appropriate, Plaintiff respectfully requests that this Court transfer this matter to the United District Court for the Northern District of Georgia, Atlanta Division.

This action arises from Target's unlawful promotion, marketing, and offering for sale of substantially similar products to those promoted, marketed, and offered for sale by Plaintiff, while using a confusingly similar mark to Plaintiff's registered trademarks. Target is a publicly traded company with a revenue of over $75.3 billion that currently employs over 360,000 people.[1] They currently operate 28 stores in the New York metro area, which is where they first offered their products for delivery and where their largest market for delivery is located.[2] Indeed, Plaintiff purchased Target's offending products inside a Target store located in this District. (Affidavit of Raymond P. Dowd ("Dowd Aff.") ¶ 3).

---

[1] *corporate overview*, TARGET, https://investors.target.com/corporate-overview?_ga=2.81860694.1739396495.1574533448-715875080.1570733357 (last visited Nov. 23, 2019) (*see* Declaration of Joseph M. Pastore III ("Pastore Dec.") ¶ 2).

[2] *Id.* (*see* Pastore Dec. ¶ 2).

G&G owns two trademarks registered with the United States Patent and Trademark Office for the name "Garnish and Gather" in connection with the sale and delivery of organic fresh fruit and vegetables and organic ready-made foods with instructions for preparing the foods.[3] (Declaration of Emily Golub ("Golub Dec.") ¶ 4). As New York is Target's largest market for the delivery of organic produce, the infringement of G&G's trademarks for the sale and delivery of organic products is especially connected to this District. Unlike Target, which has the financial resources necessary to litigate this case in this District, G&G has a revenue of $1.25M, employs 12 individuals, and has no physical retail stores. (Golub Dec. ¶ 5). The President and founder of G&G regularly comes to New York to visit family but has no connection to Minnesota. (Golub Dec. ¶¶ 6-7). Counsel to G&G has worked for the Plaintiff company since its inception and has known its President for over 20 years. (Golub Dec. ¶ 5).

The balance of factors favors the denial of the Defendants' motion to transfer this case to the District of Minnesota.

## ARGUMENT

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). The decision whether to grant a motion to transfer under § 1404(a) "is left to the sound discretion of the district court." *Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). However, "[t]he party seeking venue transfer bears the significant burden of making a clear and convincing showing that a case should be transferred." *Editorial Musical Latino*

---

[3] (Reg. No. 4,598,106, registered September 2, 2014), (Reg. No. 4,598,107, registered September 2, 2014).

2

*Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 (S.D.N.Y. 1993); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 95 (S.D.N.Y. 1995) ("[T]he moving party must make a clear-cut showing that transfer is in the best interests of the litigation.") (citation and internal quotation marks omitted).

For a motion to transfer venue under 28 U.S.C. § 1404(a), a court conducts a two-prong analysis. First, it determines whether the action to be transferred could have been brought in the transferee court. *Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006). Second, it considers the relative convenience of the two forums by weighing the following nine factors: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, (7) the relative means of the parties, (8) trial efficiency and the interests of justice, and (9) the forum's familiarity with governing law." *Fuji Photo Film Co.*, 415 F. Supp. 2d at 373 (citations and quotation marks omitted).

Defendants have not met their burden of making a clear and convincing showing that the case should be transferred to the District of Minnesota. Therefore, the Court should decline to transfer venue.

### A. **Plaintiff's Choice of Forum Warrants Substantial Deference**

G&G has chosen the Southern District of New York as the forum for this litigation, and "a plaintiff's choice of forum is entitled to substantial deference." *Pollux Holding, Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 70-71 (2d Cir. 2003) (internal citations omitted); (citing *Iragorri v. United Techs. Corp.*, 274 F.3d at 70-71 (2d Cir. 2001)). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Norex Petroleum*

*Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005). Defendants attempt to undercut this "substantial deference" by falsely claiming that "the operative facts have no connection to the chosen district." (*See* Memorandum of Law in Support of Defendants' Motion to Transfer to the District of Minnesota ("Mot.") at 8.) This is incorrect.

Plaintiff chose this forum because its entire business is based on the sale and delivery of organic products to customers. Plaintiff's business plan includes expansion into the New York metro area. (Golub Dec. ¶ 9). In order to establish a foothold in the number one market, Plaintiff must resolve this issue of confusing product being sold in this venue. Defendants currently operate 28 stores in the New York City metro area, and it is their largest market for home delivery of the offending products.[4] Deference to the plaintiff's choice of forum is owed "where the plaintiff is engaged in ongoing business activity." *Freeplay Music, LLC v. Gibson Brands, Inc.*, 195 F. Supp. 3d 613, 620 (S.D.N.Y.2016). Defendants focus on the fact that New York is not Plaintiff's home state and argue that Plaintiff should receive no deference in its choice of forum. However, less deference for a plaintiff's decision to litigate at a non-hometown court should not mean no deference. President and founder of G&G has family in the New York metro area, she regularly travels to New York, and she has never been to Minnesota. (Golub Dec. ¶¶ 6-7). G&G intends to expand throughout the eastern U.S. including the New York metro area, and its lawyer, whom the founder has known for over 20 years, is located here. (Golub Dec. ¶¶ 9-10). G&G's counsel of choice has been admitted to the Southern District of New York for over 25 years. (Golub Dec. ¶ 10).

---

[4] *50 States of Target*, TARGET, https://corporate.target.com/about/locations/50-states-of-Target. (last visited Nov. 22, 2019) (*see* Pastore Dec. ¶ 3); Kelly Tyko, *Target launches new Good & Gather food brand Sunday*, USA TODAY (Aug. 19, 2019, 7:00 AM), https://www.usatoday.com/story/money/food/2019/08/19/target-good-gather-new-store-owned-brand-coming-september/1996024001/ (*see* Pastore Dec. ¶ 4).

Case 1:19-cv-10404-JSR   Document 26   Filed 11/26/19   Page 9 of 18

Target employs over 360,000 people and brought in over $75.3 billion in revenue over the past year.[5] Many of those employees are in the State of Minnesota and particularly within the area around the courthouse for the District of Minnesota. If this case were to be transferred to Target's home court of Minnesota, it would punish the small business in favor of the superiorly-resourced party. Given that Target is such a large employer in Minnesota, if this case were transferred there, it would also give Target an advantage with a prospective jury. This District is arguably a more neutral forum for both parties, and it is Plaintiff's chosen forum for this case.

Target's strategy, with this motion or otherwise, appears to be to "wear down" its smaller opponent. Time is of the essence in that Target's conduct is tarnishing G&G's intellectual property every day. Keeping the matter in New York and proceeding to a Preliminary Injunction hearing is the most just result in this case.

For these reasons and as set forth below, the Court should deny Defendants' motion to transfer on these grounds.

### B. The Locus of Operative Facts Is in New York

Where infringing products are sold in New York, "New York has a significant connection" with the operative facts in the dispute. *Toy Biz v. Centuri Corp.*, 990 F. Supp. 328, 331 (S.D.N.Y. 1998). In an action for trademark infringement, "courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred." *Mattel, Inc. v. Adventure Apparel*, 00 Civ. 4085 (RWS), 2001 U.S. Dist. LEXIS 3179, at *12-13 (S.D.N.Y. Mar. 15, 2001) (citation and quotation marks omitted). A jurisdiction in which a defendant "actually sold its products" is a proper venue in a trademark action. *Verragio, Ltd. v. SK Diamonds*, No. 16-cv-6931

---

[5] *corporate overview*, TARGET, https://investors.target.com/corporate-overview?_ga=2.81860694.1739396495.1574533448-715875080.1570733357 (last visited Nov. 23, 2019) (*see* Pastore Dec. ¶ 2).

(KBF), 2017 U.S. Dist. LEXIS 68422, at *10 (S.D.N.Y. May 4, 2017). "[T]he issue is not whether the district at issue is the 'best venue.'" *Cosa Xentaur Corp. v. Bow*, No. 13-CV-2912 (JS) (ARL), 2014 U.S. Dist. LEXIS 46307, at *18 (E.D.N.Y. Mar. 31, 2014) (citation omitted). "[V]enue may be appropriate 'even if a greater portion of events occurred elsewhere.'" *Id.* at *19. Generally, the locus of operative facts is in "the initially chosen forum if acts of infringement, dilution, or unfair competition occurred in that forum." *YLD Ltd. v. Node Firm, LLC*, No. 15-CV-0855 (JPO), 2016 U.S. Dist. LEXIS 4826, at *10 (S.D.N.Y. Jan. 14, 2016). Therefore, the location of operative facts is in New York, and this factor weighs in favor of denying Defendants' motion to transfer.

Here, Defendants is selling infringing products within this District. (Dowd Aff. ¶ 3). Defendants also offer the infringing products online for delivery in New York. Where one can purchase the infringing products in the jurisdiction, the operative facts relate to the transaction of business within the jurisdiction. *Mattel, Inc. v. Adventure Apparel,* 2001 U.S. Dist. LEXIS 3179, at *10.

Delivery of organic products under the offending label is central to Plaintiff's complaint, and Defendants' operation of "the largest market offering [of their delivery] service" in New York directly infringes on at least one of Plaintiff's marks.[6] (Compl. ¶ 28). The infringing goods were sold and offered for delivery from 28 stores across the New York metro area.[7] (Dowd Aff. ¶¶ 2-3).  Plaintiff specifically noted an abundance of goods bearing the infringing mark and purchased offending goods in a store located in this Court's jurisdiction. (Dowd Aff. ¶¶ 3-4).

---

[6] *50 States of Target*, TARGET, https://corporate.target.com/about/locations/50-states-of-Target. (last visited Nov. 22, 2019) (*see* Pastore Dec. ¶ 3).

[7] *Id* (*see* Pastore Dec. ¶ 3); Kelly Tyko, *Target launches new Good & Gather food brand Sunday*, USA TODAY (Aug. 19, 2019, 7:00 AM), https://www.usatoday.com/story/money/food/2019/08/19/target-good-gather-new-store-owned-brand-coming-september/1996024001/ (*see* Pastore Dec. ¶ 4).

Target is infringing on G&G's trademarks in this Court's jurisdiction. Thus, the loci of operative facts is in this District, and the Court should deny Defendants' motion to transfer on these grounds.

## C. New York is a Convenient Forum for the Parties and Witnesses

When a "transfer would merely shift the inconvenience from one party to another," a court should "decline to disturb the Plaintiff's forum choice." *Williams v. Frank Martz Coach Co.*, No. 13-CV-1860 (MKB), 2014 U.S. Dist. LEXIS 66411, at \*23 (E.D.N.Y. May 14, 2014); *see also Cent. Sports Army Club v. Arena Assocs.*, 952 F. Supp. 181, 189 (S.D.N.Y. 1997) (since the locus of operative facts was in New York and defendants did not show that witnesses would be unwilling to travel, the Court held that a transfer would merely shift the inconvenience to the plaintiffs).

Defendants' total revenue last year was over \$75.3 billion; this is grossly disproportionate to Plaintiff, a budding startup that stands to lose its entire business depending on the outcome of this case.[8] G&G is managed by a young mother of two with far fewer resources and far less ability to travel to Target's hometown court. (Golub Dec. ¶ 8). Accordingly, Defendants have the better ability to bear the costs of litigation and would not be inconvenienced by traveling to this Court. *See Navajo Nation v. Urban Outfitters, Inc.*, 918 F. Supp. 2d 1245, 1249 (D.N.M. 2013) (holding that Urban Outfitters, a company with sales exceeding \$2.5 billion, had the ability to bear travel costs of litigation).

Defendants argue that their expected party witnesses are located in Minnesota, but they fail to show that requiring these party witnesses to travel will impede the litigation of the case.

---

[8] *corporate overview*, TARGET, https://investors.target.com/corporate-overview?_ga=2.81860694.1739396495.1574533448-715875080.1570733357 (last visited Nov. 23, 2019) (*see* Pastore Dec. ¶ 2).

Furthermore, given the "conveniences of modern communication and transportation," the location of Defendants' witnesses does not necessitate a transfer of venue, especially because their depositions will be taken in Minnesota. *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani,* 295 F. Supp. 3d 404, 414 (S.D.N.Y. 2017) ("While there will be some burden on iBestBargains in traveling to New York to defend, that burden is minimal.").

Defendants have failed to identify any witnesses that would be unwilling to attend trial in the SDNY. As such, Defendants have failed to meet their burden of showing why transfer to Minnesota would be appropriate under this prong.

Plaintiff's attorney for this matter, whom the President and founder of Plaintiff has known for 20 years, is located in New York and maintains no office in Minnesota. (Golub Dec. ¶ 10). If this case were transferred to Minnesota, Plaintiff would incur a greater cost of litigation which would have a disparate impact on it financially.

Furthermore, Defendants have not shown by "clear and convincing evidence" that they will be inconvenienced by traveling to this District. *See Williams*, 2014 U.S. Dist. LEXIS 6641, at *23. The location of Target's corporate headquarters in Minnesota does not demand a transfer. *See generally ESPN, Inc. v. Quiksilver, Inc.,* 581 F. Supp. 2d 542 (S.D.N.Y. 2008). It is a nationwide company that takes the risk of suit across the nation, and this trademark dispute involves products sold within this District. *Samson Cordage Works v. Wellington Puritan Mills, Inc.*, 303 F.Supp. 155, 159 (D. R.I. 1969).

Equally important, this is an intellectual property matter. Unlike a breach of contract case where documents and witnesses arise from a transaction, the infringement and confusion is not limited to Minnesota. Thus, arguing the locus of operative facts is Minnesota in such an intellectual property case is not persuasive because the operative facts exist everywhere the

infringing products are found. It is of course correct that if Plaintiff proves, as it has good reason to believe, that Target may have wrongfully copied its concept, brand, approach and business, some of the executives that engaged in such malfeasance may be in Minnesota, but they equally may be in New York or may be a G&G customer in Atlanta.

Accordingly, Plaintiff's choice should not be disturbed because transfer would greatly inconvenience the disproportionately smaller party. *Williams*, 2014 U.S. Dist. LEXIS 66411, at *23.

### D. Location of Relevant Documents Does Not Favor Transfer

Defendants have failed to satisfy their burden of showing that the present location of relevant documents creates a needless inconvenience if the case remains in the SDNY. In today's digital age, documents are easily accessible anywhere, and Defendants have not provided clear and convincing evidence that their documents are not so accessible. "In an era of electronic documents, easy copying and overnight shipping, the location of relevant documents assumes much less importance than it did formerly." *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 U.S. Dist. LEXIS 126880, at *21 (E.D.N.Y. Sep. 22, 2015) (internal citations omitted). Essentially, "[i]t is not sufficient for [Defendants] to assert merely that relevant documents are located in the proposed transferee forum, rather [Defendants] must establish that [they] would be unable to move or copy the documents easily." *Id.* Defendants have not made a sufficient showing requiring transfer; thus, this factor does not favor transfer.

### E. Relative Means of the Parties Does Not Favor Transfer

The relative means factor opposes transfer where litigation would impose a greater financial burden on a party with lesser resources. *Mattel*, 2001 U.S. Dist. LEXIS 3179, at *11-12. In determining the relative means of the parties, courts consider each party's income, their additional expenses of litigation in a given forum relative to that income, and the disruption

9

litigation would have on the business relative to the size of the party. *Intria Corp. v. Intira Corp.*, 00 Civ. 7198 (AGS), 2000 U.S. Dist. LEXIS 17039, at \*24-25 (S.D.N.Y. Nov. 27, 2000) (the Court considered the disparate revenues of the companies, \$4 million to \$500 million, along with the number of employees, 250, holding that litigation at the chosen forum would "reduce the likelihood of disruption"); *Mattel*, 2001 U.S. Dist. LEXIS 3179, at \*11-12 (comparing the annual sales of "the world's largest manufacturer of toys, games and playthings," with the annual profit of a sole proprietorship); *MasterCard Int'l Inc. v. Lexcel Sols., Inc.*, 2004 U.S. Dist. LEXIS 10906, at \*22 (S.D.N.Y. June 16, 2004) (comparing MasterCard's net income of \$116 million to Lexcel's net income of \$489,000).

Here, there is a huge disparity in the wealth and resources of the parties. Target's revenue last year was over \$75.3 billion, it employs over 360,000 people, and it operates over 1,800 stores nationwide.[9] In contrast, G&G's revenue was \$1.25M, it employs 12 people, and it does not operate any brick-and-mortar stores. (Golub Dec. ¶ 5). Although G&G currently operates out of Atlanta, it seeks to expand to the eastern United States including the New York market. (Golub Dec. ¶ 9). Furthermore, the President and founder of G&G has family in the New York metro area and she regularly travels to New York. (Golub Dec. ¶ 6). If the case is transferred to Minnesota, she would incur the additional expense of finding accommodations in Minnesota and since she has never retained counsel in Minnesota, hiring and unknown lawyer with whom she has no long-standing relationship. This fact along with the stark contrast in resources between the two parties favors the denial of Defendants' Motion to Transfer to the District of Minnesota.

---

[9] *corporate overview*, TARGET, https://investors.target.com/corporate-overview?_ga=2.81860694.1739396495.1574533448-715875080.1570733357 (last visited Nov. 23, 2019) (*see* Pastore Dec. ¶ 3).

### F.  Familiarity With Governing Law Does Not Favor Transfer

Familiarity with the governing law is generally given little weight in considering motions to change venue. *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004). Furthermore, "all federal courts are presumed to be fully capable of ruling on nationally applicable legal principles." *TM Claims Serv. v. KLM Royal Dutch Airlines*, 143 F. Supp. 2d 402, 407 (S.D.N.Y. 2001). The dominant portion of Plaintiff's causes of action are for trademark infringement claims arising under federal law. Both districts are equally familiar with the governing law. Plaintiff's fourth and fifth cause of action arise under Georgia law; both districts are equally unfamiliar with Georgia law.  Therefore, this factor does not favor transfer to Minnesota.

### G.  The Interest of Justice Does Not Favor Transfer

"Motions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." *Mohamed v. Tesfaye*, No. 18-cv-8469 (JSR), 2019 U.S. Dist. LEXIS 46197, at *10 (S.D.N.Y. Jan. 23, 2019) (internal citations omitted). This District has a reputation for judicial efficiency and this Court has already set an expeditious case management plan. Quick resolution of this matter would benefit both parties and limit expense, which is especially important to Plaintiff as a small business.

Plaintiff selected this District as a more neutral forum with national significance where Defendants are specifically infringing on its trademarks and providing home delivery of organic product under the offending label. Transfer would merely shift the inconvenience from Target, the retail giant with immense financial resources, to G&G, the fledging company. The President and founder of G&G chose this District because she has family in New York with which she could

11

stay, and she would not have to incur the added cost of other accommodations. (Golub Dec. ¶ 6) Although Target would have to bear some additional expenses to litigate this matter in New York, this added cost of litigation would disproportionately impact G&G's finances.

Therefore, justice favors the denial of the motion to transfer, as transfer would shift the inconvenience to the other, smaller party, and disturb Plaintiff's choice of forum.

## H. If this Court Deems Transfer Appropriate, Transfer to United States District Court for the Northern District Court of Georgia, Atlanta Division is Warranted

If the Court were to find that the Southern District of New York is an improper venue, Plaintiff respectfully requests that this matter be transferred to the United States District Court for the Northern District Court of Georgia, Atlanta Division – Plaintiff's home venue.

A motion to transfer venue "is not ordinarily granted at the request of the party who choose the forum in the first place." *Ferrostaal, Inc. v. Union Pac. R.R.*, 109 F. Supp. 2d. 146, 151 (S.D.N.Y 2000). A plaintiff moving to transfer must demonstrate, *inter alia*, that after the action was filed there was a change of circumstances that warrants transferring the action to the transferee forum. *Id.* (citing *Crane v. Metro-North Commuter RR*, 1989 U.S. Dist. LEXIS 7094, *6 (S.D.N.Y. 1989).

However, several courts in this District have found that "a showing of changed circumstances is not required if transfer is in the interest of justice." *United States ex rel. Fisher v. Bank of Am., N.A.*, 204 F. Supp. 3d 618, 624 (S.D.N.Y. 2016). If the Court finds that Plaintiff has established either the necessary change in circumstances *or* that a motion to transfer would be in the interests of justice by avoiding severe prejudice to plaintiff, courts will then "turn their attention to the merits of the motion" *Id.*

If the Court finds this venue to be improper, it is in the interests of justice that this matter

be moved to the United States District Court for the Northern District Court of Georgia, Atlanta Division. Plaintiff is headquartered in Atlanta, all of Plaintiff's employees are in Atlanta, and travel to Minnesota would be severely burdensome on Plaintiff and Plaintiff's resources as a small business.

Thus, if the Court finds this venue improper, Plaintiff respectfully requests that the matter be transferred to the United States District Court for the Northern District Court of Georgia, Atlanta Division.

## CONCLUSION

In light of the foregoing, the balance of factors does not support a transfer of venue. Defendants have failed to meet their burden of showing by clear and convincing evidence that transfer to the District of Minnesota is warranted. Instead, the factors on balance weigh strongly against a transfer. For these reasons, Defendants' Motion to Transfer to the District of Minnesota should be denied.

DATED:  New York, New York
        November 26, 2019

**Attorneys for Plaintiff**

By:_____
    Joseph M. Pastore III (JP1717)
    Melissa Rose McClammy (MM7258)
    Pastore & Dailey LLC
    420 Lexington Avenue, 3rd Floor
    New York, NY 10170
    845.667.5711 (p)
    646.661.4322 (f)
    *Attorneys for Plaintiff*

13

By:___________/S/____________

Michael Lee
Lee Law PLLC
579 Fifth Avenue, 14th Floor
New York, NY 10606
212-621-8239
*Attorneys for Plaintiff*