**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GARNISH AND GATHER, LLC,

       *Plaintiff,*

   -against-

TARGET CORPORATION AND TARGET
BRANDS, INC.,

      *Defendants.*

Case No. 1:19-cv-10404-JSR

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Joseph M. Pastore III (JP1717)
Melissa Rose McClammy (MM7258)
Pastore & Dailey LLC
420 Lexington Avenue, 3rd Floor
New York, NY 10170
845.667.5711 (p)
646.661.4322 (f)
*Attorneys for Plaintiff*

Michael Lee
Lee Law PLLC
579 Fifth Avenue, 14th Floor
New York, NY 10606
212-621-8239
*Advisory Attorney*

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT ............................................................................................................................... 1

    A.   G&G is Likely to Prevail on the Merits ........................................................................ 1

        *i.*      *G&G's Trademark Rights Are Enforceable Nationwide* ...................................... 1

        *ii.*     *G&G Has Shown a Likelihood of Confusion* ..................................................... 2

        *a.*      *G&G's Mark is Strong in the Relevant Market* .................................................... 2

        *b.*     *The Marks are Similar* ....................................................................................... 3

        *c.*      *The Products are in Competitive Proximity* ........................................................ 4

        *d.*     *Plaintiff Has Shown It Has "Bridged the Gap"* ................................................... 5

        *e.*      *G&G Has Evidence of Actual Confusion* ............................................................. 6

        *f.*      *Target Acted in Bad Faith in Adopting Its Mark* ................................................ 7

        *g.*     *The Quality of the Parties' Respective Goods Makes Confusion Likely* ............... 7

        *h.*     *Target's Argument About Sophistication of Customers Lacks Merit* ................... 7

    B.   G&G Will Suffer Irreparable Harm Absent a Preliminary Injunction ............................. 7

    C.   The Balance of the Hardships Favors G&G ................................................................. 8

    D.   The Public Interest Weighs in Favor of an Injunction ................................................. 9

    E.   G&G Should Not be Required to Post a Bond .............................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, 2008 U.S. Dist. LEXIS 22026 (S.D.N.Y. Mar. 20, 2008) ............................................................................................ 12

*Bonilla v. H&M Hennes & Mauritz L.P.*, 2014 U.S. Dist. LEXIS 197579 (S.D.N.Y. Apr. 16, 2014) ................................................................................................................................ 3

*Brennan's, Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 132-33 (2d. Cir. 2004) ........... 2

*Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033 (2d Cir. 1992) .................... 4

*Citigroup Inc. v. AT&T Servs.*, 2016 U.S. Dist. LEXIS 106435 (S.D.N.Y. Aug. 11, 2016)... 8

*Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358 (2d Cir. 1959) ......................... 1, 2

*De Beers LV Trademark v. DeBeers Diamond Syndicate*, 440 F. Supp. 2d 249 (S.D.N.Y. 2006) ................................................................................................................................. 5

*Disney Enters. v. Sarelli*, 322 F. Supp. 3d 413 (S.D.N.Y. 2018) ............................................. 9

*Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27 (2d Cir. 2016) ......................... 7

*Juicy Couture, Inc. v. Bella Int'l, Ltd.*, 930 F. Supp. 2d 489 (S.D.N.Y. 2013) ....................... 6

*Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278 (S.D.N.Y. 2012) ............................ 5

*Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271 (S.D.N.Y. 1998) 4

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485 (S.D.N.Y. 2015) ... 8

*Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827 (8th Cir. 1999) ............................................... 4

*Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322 (S.D.N.Y. 2011) ........................................... 10

*Nabisco, Inc. v. PF Brands*, 50 F. Supp. 2d 188 (S.D.N.Y. 1999) ........................................... 9

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2d Cir. 2000) .......................................... 4

*Nikon, Inc. v. Ikon Corp.*, 1992 U.S. Dist. LEXIS 6299 (S.D.N.Y. May 1, 1992) ................. 3

*Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305 (S.D.N.Y. 2000) ................. 3

*Polaroid Corp. v. Polarad Elcs. Corp.*, 287 F.2d 492 (2d Cir. 1961) ....................................... 5

*ProFitness Phys. Therapy Ctr. v. Pro- Fit Ortho. and Sports Phys. Therapy P.C.*, 314 F.3d

62 (2d Cir. 2002)................................................................................................ 12

*Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir. 1976).............................. 4

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009)........................ 7

*Sunenblick v. Harrell*, 895 F. Supp. 616 (S.D.N.Y. 1995)........................................................... 3

*United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) 7

*Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527 (10th Cir. 1994) ..... 5

*W.W.W. Pharm. Co v. Gillette Co.*, 984 F.2d 567 (2d Cir. 1993) ............................................. 4

*Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995 (Fed. Cir. 1986) ...................................... 11

Plaintiff Garnish and Gather LLC ("Plaintiff" or "G&G") respectfully submits this reply in support of its Application for a Preliminary Injunction against Defendants Target Corporation and Target Brands, Inc. (collectively, "Defendants" or "Target"). As discussed more fully herein, G&G also submits the Declaration of Mark Keegan ("Keegan Dec."), in response to claims made by Defendants, which details preliminary national survey results relevant to the marks.

## ARGUMENT

### A. G&G is Likely to Prevail on the Merits

*i.    G&G's Trademark Rights Are Enforceable Nationwide*

Target's opposition is an attempt by a multi-billion dollar corporation to rewrite trademark law so that it can steam roll a small business that has been using the marks at issue in commerce for 6 years. Fortunately, U.S. Trademark Law is not subject to bullying. Plaintiff's registered trademarks are protected from infringement, both locally and nationally, and this uniform protection is provided to trademark holders no matter how large the infringer or small the trademark owner. Equally important, the Lanham Act "affords nationwide protection to registered marks, regardless of the areas in which the registrant actually uses the mark." *Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 362 (2d Cir. 1959). Despite Target's protests, G&G's trademark rights are not legally geographically limited since G&G's federally registered marks have been used in connection with the sale and delivery of foodstuffs in the United States since 2012. (*See* Golub Dec., Dkt. 33 ("Dkt. 33") ¶ 3).

While it is clear that G&G's trademarks are not legally limited to a geographical area, Target nevertheless contends that G&G's trademark use "cannot support a nationwide injunction." citing *Brennan's, Inc. v. Brennan's Restaurant, LLC*, 360 F.3d 125, 132-33 (2d. Cir. 2004) and *Dawn Donut Co.* (Defs. Mem. of Law in Opp. to Mot., Dkt. 40 (hereinafter

"Dkt. 40") at 3). However, both of these decisions draw heavily from the fact that the plaintiffs and defendants in those cases were using the marks in "different" isolated geographical locations. *See Brennan's, Inc.*, 360 F.3d at 132-33 ("substantial geographic separation remains a significant indicator that the likelihood of confusion is slight"); *Dawn Donut Co.*, 267 F.2d. at 358 ("if the use of the marks by the registrant and the unauthorized user are confined to two sufficiently distinct and geographically separate markets, with no likelihood that the registrant will expand his use into defendant's market, so that no public confusion is possible, then the registrant is not entitled to enjoin the junior user's use of the mark."). This case, however, is not a case involving separate and distinct geographic markets – there is overlap and possible future overlap. Target concedes that it uses its mark "nationwide" (Dkt. 40 at 10), which by definition includes Atlanta, Georgia and the surrounding area, the region in which G&G presently operates. Indeed, the record shows that Target sells and delivers items bearing the infringing mark in the Atlanta region. (Dkt. 33 ¶¶ 20-23).

      *ii.*    *G&G Has Shown a Likelihood of Confusion*

           *a.*  *G&G's Mark is Strong in the Relevant Market*

Target contends that G&G's mark is not strong because G&G, as a small, relatively local business with a comparatively modest advertising budget, "could not create a strong brand among the 'pool of actual and potential' Target grocery shoppers." (Dkt. 40 at 5). This is a reverse confusion case, however, and thus in this case, the "relevant market" is not the pool of *Target* shoppers but rather the pool of actual and potential *G&G* grocery shoppers. "Reverse confusion" occurs when "the junior user's advertising and promotion so swamps the senior user's reputation in the market that customers are likely to be confused into thinking that the senior user's goods are those of the junior user." *Bonilla v. H&M Hennes & Mauritz*

*L.P.*, 2014 U.S. Dist. LEXIS 197579, at *16-17 (S.D.N.Y. Apr. 16, 2014) (internal citations and quotation marks omitted). "[W]hen the issue is whether consumers mistakenly believe that the senior user's products actually originate from the junior user, the appropriate universe consists of the senior user's customers." *Paco Sport, Ltd. v. Paco Rabanne Parfums*, 86 F. Supp. 2d 305, 322 (S.D.N.Y. 2000).

Target also incorrectly argues that G&G's mark is weak because of third-party use of the name "Gather." (Dkt. 40 at 6). This argument also fails. The significance of third-party trademarks depends upon proof of their usage and customer awareness of the marks. *See Sunenblick v. Harrell*, 895 F. Supp. 616, 627 (S.D.N.Y. 1995); *Nikon, Inc. v. Ikon Corp.*, 1992 U.S. Dist. LEXIS 6299, at *2 (S.D.N.Y. May 1, 1992). Target, however, has made no showing that the third-party marks are "actually used by third-parties, that they [are] well promoted or that they [are] recognized by consumers." *See Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 282 (S.D.N.Y. 1998) (citing *Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976)).

  *b.   The Marks are Similar*

The similarity of the marks is obvious and readily apparent. Target states that its products are seen in the context of its stores or website and its "famous" Target bullseye mark. (Dkt. 40 at 6-8). Target relies on *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000), for the proposition that use of the Target house mark "significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused." (Dkt. 40 at 7-8). But unlike all the cases cited in *Nabisco*, Target's Good & Gather mark does not include its company name. *See  W.W.W. Pharm. Co v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (RIGHT GUARD SPORT STICK and SPORTSTICK); *Bristol-Myers Squibb Co. v. McNeil-*

*P.P.C., Inc.*, 973 F.2d 1033, 1045-46 (2d Cir. 1992) (EXCEDRIN PM and TYLENOL PM); *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) (MICHELINA'S LEAN 'N TASTY and STOUFFER'S LEAN CUISINE); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994) (AT&T UNIVERSAL CARD and UNIVERSAL MONEY). The mark in question is not "Target's Good & Gather" or "Target Good & Gather"; it is "Good & Gather." Target's reliance on *Nabisco* is therefore misplaced.

Target's argument that the Court should defer to the Patent and Trademark Office is also unavailing. (*See* Dkt. 40 at 10). Target quotes a footnote in *De Beers LV Trademark v. DeBeers Diamond Syndicate* for the proposition that "it is appropriate to 'accord weight' to an initial determination of a PTO examiner" but fails to provide the complete quotation, which states that "a district court must resolve the issue of likelihood of confusion 'not by reference to a registration determination by the PTO but by application of the multi-factor balancing test set forth in *Polaroid*.'" *De Beers LV Trademark v. DeBeers Diamond Syndicate*, 440 F. Supp. 2d 249, 274 n.24 (S.D.N.Y. 2006). In fact, a decision of the USPTO is due only "limited" deference and "the Court is 'not bound' by such an initial determination, and is obligated to ultimately render its own decision on the merits." *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 292 (S.D.N.Y. 2012) (citations omitted).

### c.   The Products are in Competitive Proximity

Target's claim that the two brands are not competitively proximate is unpersuasive. When considering competitive proximity, courts look at market proximity and geographic proximity to determine whether the two products have an overlapping client base. *Brennan's, Inc.*, 360 F.3d at 134. Target claims that G&G is a "luxury product" while Target sells "$1.99 gallons of milk." (*See* Dkt. 40 at 10-11). In fact, numerous products are sold by both G&G

and Target, such as organic lettuce, carrots and eggs. (Dkt. 33 ¶ 16). The proper comparison is literally "apples" to "apples." (*Id.*)

Moreover, Target does not deny that its "guests" include actual and potential G&G shoppers. These customers are most likely to be confused by Target's use of the infringing mark. And Target and G&G both market, sell, and deliver via the Internet; their products are therefore sold in the same channels. *See Juicy Couture, Inc. v. Bella Int'l, Ltd.*, 930 F. Supp. 2d 489, 501 (S.D.N.Y. 2013) (holding that the companies' products are advertised and sold in the same channels because they both sell on the internet and target women as consumers). Although Target is nationwide and G&G is presently limited to Atlanta, Target also delivers produce bearing the infringing mark to customers located in this area. (Dkt. 33 ¶ 23). Equally, G&G's customers presumably travel outside the Atlanta area and will observe the infringing Target marks in other areas of the country.

### d. Plaintiff Has Shown It Has "Bridged the Gap"

This factor comes into play when the senior user is not yet in direct competition with the junior user and considers the likelihood that the gap between the two will be bridged by either's future expansion. *United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011). As discussed above, G&G already competes with Target in Atlanta by marketing and selling similar goods through similar channels to similar consumers. Therefore, there is no gap to bridge for the purposes of this argument. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97 (2d Cir. 2009) ("'bridging the gap' factor is irrelevant where, as here, the two products are in direct competition with each other").

To the extent this factor is relevant, it favors G&G. Target's use of its confusingly similar mark nationwide will impede G&G's expansion to new markets. (Dkt. 40 at 10). It also

impacts traveling G&G customers. G&G, as the senior user of the mark, "is the entitled user and should not be confined within the present scope of its commerce by the risk of confusion that will result from a reasonably plausible expansion of its business." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 45 (2d Cir. 2016) (internal citations omitted).

### e.   *G&G Has Evidence of Actual Confusion*

It is "black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Guthrie Healthcare Sys.*, 826 F.3d 27, 45 (2d Cir. 2016). Regardless, G&G, in response to allegations and claims made by Target in their opposition papers, has established actual confusion through a statistically significant survey. (Keegan Decl. at 5). "A plaintiff can often show actual confusion by way of a well-designed consumer survey." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 495 (S.D.N.Y. 2015). A statistically significant survey of Plaintiff's principal customer base – purchasers of meal kit and grocery delivery services – establishes a likelihood of consumer confusion to an extent "well above those that Courts in this Circuit have found probative of actual confusion." *Id.* at 496 (collecting cases). Specifically, among the relevant market, 80.9% of the test group of respondents believed that G&G's marks were made by, associated with or approved by Target. (Keegan Decl. at 10). After subtracting the control group from the test group, the net confusion rate is [ 56.5% ]. (Keegan Decl. at 5). Consumer survey expert, Mark Keegan, found to a reasonable degree of professional certainty that these results indicate that relevant customers of G&G are likely to confuse the G&G marks with the infringing marks. (Keegan Decl. at 13).

*f.  Target Acted in Bad Faith in Adopting Its Mark*

Although "[a]ctual or constructive knowledge" of another company's prior registration and use of a mark "may signal bad faith," this factor "would be more-or-less neutral even if [Target] were to definitively demonstrate its good faith; only a finding of bad faith carries much weight in the *Polaroid* balancing test for consumer confusion." *Citigroup Inc. v. AT&T Servs.*, 2016 U.S. Dist. LEXIS 106435, at *33 (S.D.N.Y. Aug. 11, 2016) (internal citations omitted). If Target is correct, the factor is inconsequential. If G&G is proven correct, this factor weighs in its favor.

*g.  The Quality of the Parties' Respective Goods Makes Confusion Likely*

Target claims that a difference in quality tends to reduce the likelihood of confusion. (Dkt. 40 at 13-14 (*citing Disney Enters. v. Sarelli*, 322 F. Supp. 3d 413, 437 (S.D.N.Y. 2018)). However, where "the quality of a junior user's product or service is low compared to the senior user, 'there is an increased chance of actual injury when there is confusion.'" *Disney Enters.*, at 437 (internal citations omitted).

*h.  Target's Argument About Sophistication of Customers Lacks Merit*

Target argues that G&G is expensive and therefore its customers are sophisticated. (Dkt. 40 at 14). However, purchasers of ordinary groceries are held to a lesser standard of purchasing care. *Nabisco, Inc. v. PF Brands,* 50 F. Supp. 2d 188, 206 (S.D.N.Y. 1999). In any event, G&G offers many products at similar prices including offering lettuce for sale at a cheaper price than Target. (Dkt. 33 ¶ 20). Thus, Target's argument about the sophistication of G&G's customers lacks merit.

**B.  G&G Will Suffer Irreparable Harm Absent a Preliminary Injunction**

"[A]lthough a likelihood of confusion does not create a presumption of irreparable

injury, a particularly strong likelihood of confusion should weigh in favor of finding irreparable injury." *Marks Org., Inc. v. Joles*, 784 F. Supp. 2d 322, 334 (S.D.N.Y. 2011). Here, G&G has shown both a likelihood of confusion and actual confusion in the form of consumer survey evidence which will result in lost goodwill. *Id.* at 335 ("where the likelihood of confusion is so high, it is impossible to disaggregate lost good will from confusion"). Prospective customers in the existing market and in new markets are likely to assume that its products are made by, associated with or approved by Target.  (Keegan Decl. at 13).

In addition, G&G's supposed delay was not caused by a lack of urgency. During the time between when G&G first learned of Target's plan to release an infringing mark and when G&G successfully filed its application for Preliminary Injunction, the parties were engaged in protracted settlement negotiations which, if fruitful, would have resulted in a reasonable partnership between the parties for the benefit of both G&G and Target. (Dkt. 34 ¶ 14). This is not a case in which G&G concluded there was no infringement, only to decide to bring an action after discovering the strength of Target's commercial competition. *Marks Org., Inc.*, 784 F. Supp. 2d at 334 (S.D.N.Y. 2011) (noting that "the cases where courts held that a plaintiff's delay defeated the presumption of irreparable injury were 'cases in which the fair inference was drawn that the owner of the mark . . . had concluded that there was no infringement but later brought an action because of the strength of the commercial competition.'") (internal citations omitted).

C. **The Balance of the Hardships Favors G&G**

Target's argument that the balance of the hardships disfavors G&G is unpersuasive. (Dkt. 40 at 16-17). Target, having knowledge of G&G's marks, and after having received a

8

cease and desist letter (Dkt. 34 ¶ 14 and Ex. 7),[1] proceeded to put ███████████ of infringing perishables into stores; their decision to do so is their own and should not limit G&G's remedies. *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected").

### D.  **The Public Interest Weighs in Favor of an Injunction**

The only argument offered by Target in support of its position that an injunction would not serve the public interest is its claim that an injunction "would result in the spoilage of ███████████ of perfectly good food." (Dkt. 40 at 17-18). In support, Target cites "generally" to the Declaration of Carisa Janssen. (Dkt. 41).  But while Ms. Janssen states that Target's inventory includes perishable food, she does not claim that she or other Target employees would choose to let that food go to waste if an injunction is issued. (Dkt. 41 ¶ 4). In fact, when Target has been faced with the possible spoilage of perishable food in other contexts, it has donated that food. (*See, e.g.,* Ex. A and B to Pastore Declaration).  It appears that Target is able to donate food on a large scale; Target boasts on its website that in 2018 it donated more than 5 million pounds of food (Ex. C to Pastore Declaration).

It is indisputable that the public interest is served by protection of trademark rights; the Second Circuit has long held that there is a "strong interest in preventing public confusion." *ProFitness Phys. Therapy Ctr. v. Pro- Fit Ortho. and Sports Phys. Therapy P.C.,* 314 F.3d 62, 68 (2d Cir. 2002). Here, G&G has established a high likelihood of confusion that will

---

[1] Plaintiff recognizes that Exhibit 7 and Exhibit 8 to Dkt. 34 were labeled incorrectly. All references in Plaintiff's moving papers to Exhibit 7 are to Exhibit 8 and vice versa.

continue to occur if an injunction does not issue.

### E.  G&G Should Not be Required to Post a Bond

"District courts in the Second Circuit are vested with wide discretion in determining the amount of the bond that the moving party must post." *Barrack, Rodos & Bacine v. Ballon Stoll Bader & Nadler, P.C.*, 2008 U.S. Dist. LEXIS 22026, at *23-24 (S.D.N.Y. Mar. 20, 2008) (internal citations omitted). In cases where the defendant has failed to prove hardship, the Court may properly set no bond. *Id.* (internal citations omitted). Given that G&G has modest resources and Target is a multi-billion dollar corporation, the suggestion by Target that a bond be posted is pure tactics – a clear effort to avoid answering for its conduct by making any remedy impossible. Were the Court to order a bond in such circumstances, then large multi-billion dollar bad actors would be given free license to trample small competitors without fear of consequence. Therefore, the Court should not require a bond, which could unduly burden G&G's ability to enforce its trademark rights.

DATED:      New York, New York
            January 2, 2020

                                            **Attorneys for Plaintiff**

                                            By:____/s/_____
                                                Joseph M. Pastore III (JP1717)
                                                Melissa Rose McClammy (MM7258)
                                                Pastore & Dailey LLC
                                                420 Lexington Avenue, 3rd Floor
                                                New York, NY 10170
                                                845.667.5711 (p)

                                            By:____/s/_____
                                                Michael Lee
                                                Lee Law PLLC
                                                579 Fifth Avenue, 14th Floor
                                                New York, NY 10606
                                                212-621-8239