**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
                                                               :
Garnish and Gather, LLC,                                       :
                                                               :  Civil Action No. 1:19-cv-10404 (JSR)
                              Plaintiff,                       :
                                                               :
                vs.                                            :
                                                               :
Target Corporation and Target Brands, Inc.,                    :
                                                               :
                              Defendants.                      :
                                                               :
                                                               :
---------------------------------------------------------------X


**Defendants' Sur-Reply in Opposition to**
**Plaintiff's Motion for a Preliminary Injunction**

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Apple v. Atl. Yards Dev. Co*,
  2015 WL 11182422 (E.D.N.Y. Mar. 31, 2015) ........................................................................ 2

*Bonilla v. H&M Hennes & Mauritz*,
  2014 U.S. Dist. LEXIS 197579 (S.D.N.Y. Apr. 16, 2014) ....................................................... 5

*Cumberland Packing Corp. v. Monstanto Co.*,
  32 F. Supp. 2d 561 (E.D.N.Y. 1999) .................................................................................... 2, 3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) .............................................................................................................. 2, 3

*General Electric Co. v. Joiner*,
  522 U.S. 136 (1997) .................................................................................................................. 3

*Kargo Glob., Inc. v. Advance Magazine Publishers, Inc.*,
  2007 WL 2258688 (S.D.N.Y. Aug. 6, 2007) ............................................................................ 3

*Nabisco, Inc. v. Warner-Lambert Co.*,
  220 F.3d 43 (2d Cir. 2000) ....................................................................................................... 5

*Nat'l Distillers Prod. Co. v. Refreshment Brands, Inc.*,
  198 F. Supp. 2d 474 (S.D.N.Y. 2002) ...................................................................................... 2

*THOIP v. Walt Disney Co.*,
  690 F. Supp. 2d 218 (S.D.N.Y. 2010) .................................................................................. 1, 3

*Tutor Time Learning Centers, LLC v. GKO Grp., Inc.*,
  2013 WL 5637676 (S.D.N.Y. Oct. 15, 2016) .......................................................................... 1

*United States v. Gigante*,
  39 F.3d 42 (2d Cir. 1994) ......................................................................................................... 1

*United Drug Co. v. Theodore Rectanus Co.*,
  248 U.S. 90 (1918) ................................................................................................................... 1

**Rules**

Fed. R. Evid. 702 ........................................................................................................................... 2

Garnish's expert declaration and theory of reverse confusion—both offered for the first time with its reply brief—reflect its "fundamental error of supposing that a trademark right is a right in gross." *See United Drug co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918). They fail to center the infringement analysis around actual marketplace conditions and they present no coherent theory of consumer confusion—the true scope and limitation of trademark rights. *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218, 228-29 (S.D.N.Y. 2010). Garnish's expert declaration is therefore inadmissible: in addition to its untimely submission, it is wholly artificial, failing to utilize a reliable methodology reflecting marketplace conditions. Garnish's reverse confusion theory is similarly deficient: it presents new arguments which contradict the old and ignores the real-world factors which show no confusion here.

For these and all the other reasons in Target's briefing, Garnish's motion for a preliminary injunction should be denied.

## ARGUMENT

### I.      The Keegan Declaration is Inadmissible and Entitled to No Weight

The declaration of Mark Keegan is untimely and does not meet the standards of admissibility for expert testimony. It is entitled to no weight.

Garnish submitted the Keegan declaration for the first time with its reply brief. (*See* Dkt. 45.) It is improper to submit new evidence for the first time on reply; among other things, it is prejudicial to the opposing party, who is not given a fair opportunity to consider it. *See United States v. Gigante*, 39 F.3d 42, 50 n.2 (2d Cir. 1994); *Tutor Time Learning Centers, LLC v. GKO Grp., Inc.,* No 13-cv-2980-JMP, 2013 WL 5637676, at *1 (S.D.N.Y. Oct. 15, 2016). Allowing Target less than one week to submit a sur-reply does not cure this prejudice, as Target has

1

already submitted its opposition brief and supporting evidence. The Keegan declaration, and accompanying arguments, should therefore be excluded.

If the Keegan declaration is at all considered, it should be rejected as inadmissible, because Garnish has not shown it to rest on a reliable foundation. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); Fed. R. Evid. 702. Garnish offers the Keegan declaration as expert testimony, and as the proponent of expert testimony, it was Garnish's burden to prove it admissible. *See Apple v. Atl. Yards Dev. Co*, Case No. 11-cv-5550-CBA, 2015 WL 11182422, at *8-9 (E.D.N.Y. Mar. 31, 2015) Garnish—which relies on the conclusory allegation that Keegan's findings are based on a "reasonable degree of professional certainty"—has failed to make this showing. (Dkt. 43 at 10.)

While Keegan purports to set out the results of a consumer survey, and consumer surveys are often admissible in trademark cases, his declaration does not show a survey resting on reliable foundations. In fact, the underlying methodology is left largely a mystery—Keegan does not provide enough information even to mount a full critique, let alone to establish the survey as reliably done. For instance, surveys are assessed (and often excluded) in trademark cases on the basis of their stimuli, including careful consideration of specific questions and responses. *See, e.g., Cumberland Packing Corp. v. Monstanto Co.*, 32 F. Supp. 2d 561, 571 (E.D.N.Y. 1999). But Keegan's declaration does not put the specific survey questions and responses into the record; it does not disclose the survey itself. (*See* Dkt. 45, ¶¶ 6-11.) In the circumstances, Garnish cannot establish it as reliable. Keegan's declaration also fails to show that the "universe" of survey respondents was properly defined—another prerequisite for reliable survey evidence. *See Nat'l Distillers Prod. Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 483-84 (S.D.N.Y. 2002) (excluding survey where universe was improper). Instead, Garnish again relies

on conclusory allegations: that the respondents "qualified" as falling within the "relevant universe (See, e.g., Dkt. 45, ¶ 10.) Such allegations do not show testimony to be reliable under *Daubert* and its progeny. *See, e.g., General Electric Co. v. Joiner*, 522 U.S. 136 (1997) (criticizing "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

Mirroring the fundamental errors in Garnish's case, Keegan's declaration also does not show a survey that "sufficiently replicate[d] the manner in which consumers encountered the parties' products in the marketplace." *See THOIP v. Walt Disney Co.*, 690 F. Supp. 2d 218at 240-41 (S.D.N.Y. 2010). Keegan provides no indication of how the marks were presented to consumers at all—with or without design elements, in the context of retail stores or a food delivery service, simply as a list of words, or otherwise. (*See* Dkt. 45, ¶ 9.) What can be gathered from the declaration suggests that the survey "employed a format that failed to approximate real world conditions and was impermissibly leading." *See Kargo Glob., Inc. v. Advance Magazine Publishers, Inc.*, No. 06-cv-550-JFK, 2007 WL 2258688, at *7 (S.D.N.Y. Aug. 6, 2007) (excluding survey in a reverse confusion case). The format certainly suggested the desired answer: nearly 25% of respondents believed that the unrelated marks in the survey—SNAP KITCHEN, ONE POTATO, and MADISON & RAYNE—were affiliated with Target's GOOD & GATHER brand. This reveals fundamental flaws in the survey methodology justifying exclusion (and certainly does not show an effective control). *See Cumberland Packing Corp*, 32 F. Supp. 2d at 574-76.

The Keegan declaration was submitted late and without showing that it qualifies as admissible expert testimony. What can be seen reveals a flawed methodology that does not meet

3

the standards of *Daubert* and the Federal Rules of Evidence. The Keegan declaration is entitled to no weight and should be excluded.

## II.     Garnish's Claim of Reverse Confusion is Inconsistent with its Prior Allegations

Garnish's reply brief claims that this has always been "a reverse confusion case." (Dkt. 43 at 6.) In fact, reverse confusion is a new theory, never previously pled or argued. And it is inconsistent with many of Garnish's prior allegations, reflecting Garnish's inability to establish an overall theory of infringement consistent with real-world conditions.

For instance, Garnish's longstanding claims about Target's intent do not square with its theory of reverse confusion. Garnish has insisted that Target's GOOD & GATHER brand was conceived with a "willful intent to capitalize on G&G's goodwill," in order to "cause the public to believe falsely that G&G is the source of Target's food products." (Dkt. 32 at 5.) While there is no evidence of any such thing, this argument was at least consistent with a theory of forward confusion—where consumers falsely believe that the senior user (Garnish) is the source of the junior user's (Target's) products. It is, of course, not consistent with the opposite theory.

Garnish's claims about Target's intent reveal other problems with its reverse confusion theory. Those claims emphasize Garnish as a brand "centered around working with small local farmers and chefs to source high-quality produce," and its "reputation for selling high-quality, locally-sourced organic produce." (Dkt. 32 at 21, 23.) But these elements of Garnish's brand—a local Atlanta company with a local identity—dispel any notion of reverse confusion. Garnish's customers can only sign up for its Atlanta-area meal-kit delivery service online, where they are bombarded with hometown branding, including a picture and quote from Garnish's founder Emily Golub stating "I started Garnish & Gather so I could share this love of local with y'all, my Atlanta neighbors." (*See* Dkt. 42-1.) Consumers simply are not going to believe that Ms. Golub is sharing her "love of local with y'all, my Atlanta neighbors" as a part of Target Corporation's

4

nationwide line of GOOD & GATHER cans of sparkling water and other grocery staples. It is not reasonable to suggest that Target sought to somehow benefit from such confusion in launching the GOOD & GATHER brand.

Garnish's arguments about the strength of the mark also cannot be squared with its reverse confusion claim. Garnish continues to argue that its mark is "Strong," now by limiting the "relevant market" as "the pool of actual and potential G&G grocery shoppers."[1] (Dkt. 43 at 6.) But even if this is true, it counts *against* Garnish's claim of reverse confusion—a senior user with a strong mark is unlikely to be "swamp[ed]" by a junior user. *See Bonilla v. H&M Hennes & Mauritz*, 2014 U.S. Dist. LEXIS 197579, at *16-17 (S.D.N.Y. Apr. 16, 2014). Again, Garnish's blinkered attempt to show strength in each *Polaroid* factor misses the forest for the trees, ignoring "overall impression created by . . . the context in which [the brands] are found." *See Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000) (citation and quotation omitted). As set out further in Target's opposition brief, the marks in the actual context of their use show that there is no likelihood of confusion here.

## CONCLUSION

The new materials submitted with Garnish's reply brief do nothing to support its motion for a preliminary injunction. The declaration of Mark Keegan is untimely and does not meet the standards of admissibility for expert testimony—it is entitled to no weight at all. And the new reverse confusion theory contradicts the old and underscores that the marks in the context of their use are not likely to confuse consumers. For these reasons and all the others put forward by Target, Garnish's motion for a preliminary injunction should be denied.

---

[1] As Garnish does not offer groceries for purchase in retail stores, presumably it here means actual and potential subscribers to its food delivery service.

Dated: January 8, 2019            Respectfully submitted,

By:  */s/ Peter M. Routhier*
James R. Steffen (*pro hac vice*)
Peter M. Routhier (*pro hac vice*)
**FAEGRE BAKER DANIELS LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: 612 766 8770
Fax: 612 766 1600
Email: james.steffen@FaegreBD.com
Email: peter.routhier@FaegreBD.com

Lita Beth Wright
**AMINI LLC**
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017
Telephone: 212.490.4700
Fax: 212.490.4208
Email: lbwright@aminillc.com

*Attorneys for Defendants Target Corporation and Target Brands, Inc.*